UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM MEUNIER<br>*Plaintiff,*<br><br>v.<br><br>SERVICENET, INC. and ROBERT<br>HARDY<br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by his attorneys, Laura D. Mangini, Esq., and Alex J. Grant, Esq., alleges as

follows:

### INTRODUCTION

1. This is an action for discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and Massachusetts General Laws chapter 151B, arising from ongoing, unwelcome, and sexual touching and related misconduct directed at Plaintiff by Defendant Robert Hardy, and the failure of Defendant ServiceNet, Inc. to prevent, remedy, or correct the harassment after notice.

### JURISDICTION & VENUE

2. This federal district court has jurisdiction over this cause, because this action alleges various violations of 15 U.S. Code § 6851 and thus arises "under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), because the Defendants reside in Massachusetts and because "a substantial part of the events or omissions giving rise to the claim occurred" in this district, or "a substantial part of property that is the subject of the action is situated in this district."

### PARTIES

4. Plaintiff, William Meunier, is an individual residing at 91 Ridgeview Terrace, Westfield, Massachusetts 01085.

5. Defendant ServiceNet, Inc. is a Massachusetts nonprofit corporation with a business address at 21 Olander Drive, Northampton, Massachusetts 01060.

6. Defendant Robert Hardy was at all relevant times employed by ServiceNet as a Nurse Educator.

## FACTS COMMON TO ALL COUNTS

7. Mr. Meunier began working for ServiceNet in or about September 2021 as a nurse care manager, with an office at 2119 Riverdale Road, West Springfield, Massachusetts 01089.

8. His job required managing care for over two dozen patients in ServiceNet group homes, working both at the Riverdale Road office and at various group homes.

9. Hardy's duties included giving trainings for staff, including overseeing ServiceNet's annual training on sexual discrimination and sexual harassment.

10. Mr. Meunier frequently saw Hardy at the Riverdale Road location and at different group homes as required by their duties, and they interacted as part of their job duties, with Mr. Meunier sometimes filling in to do trainings.

11. Within a short time of the beginning of Mr. Meunier's employment, Hardy walked up to him and grabbed his chest in the area around the nipple.

12. Mr. Meunier objected to Hardy touching him in this way, but Hardy continued despite repeated admonitions to stop.

13. Hardy grabbed Mr. Meunier's chest in this manner on dozens of occasions, regularly and consistently during Mr. Meunier's employment at ServiceNet.

14. In or about April 2025, Hardy grabbed Mr. Meunier's chest in the area around the nipple while they were at a group home in Massachusetts.

15. On a number of occasions, Hardy engaged in this chest-grabbing behavior in front of one or more of Mr. Meunier's supervisors.

16. Each incident was degrading, humiliating, and a violation of Mr. Meunier's bodily autonomy, and he felt the behavior was sexual in nature.

17. After the April 2025 incident at the group home, Mr. Meunier spoke to his direct supervisor about his distress regarding Hardy's grabbing without consent.

18. His direct supervisor later told him she had one or more meetings with other managers to discuss Hardy's behavior toward him.

19. His supervisor told him she would attempt to act as a buffer between Hardy and him moving forward.

20. Given the nature, timing, and locations of interactions with Hardy, Mr. Meunier knew it would be impossible for his supervisor to act effectively as a physical barrier.

21. His supervisor told him that management would not take more direct action against Hardy's conduct because of Hardy's value to ServiceNet.

22. Further conversations with his supervisor and other members of management indicated that nothing would be done to prevent future chest grabbing.

23. He was told by persons in management and a person from human resources that they had been aware of Hardy engaging in inappropriate workplace behavior.

24. Mr. Meunier personally witnessed Hardy tell his assistant that he would like to punch her in the face and would like to punch the assistant's grandchild in the head.

25. He personally witnessed Hardy make sexual comments about a female colleague, both to her and outside her presence.

26. As Mr. Meunier realized nothing would be done to prevent further grabbing, he became increasingly upset and emotionally distressed.

27. In a subsequent conversation, his supervisor remarked that she thought Mr. Meunier would have punched Hardy; he responded that striking a co-worker in the workplace was not possible.

28. In June 2025, Mr. Meunier spoke to an employee in human resources about his distress and Hardy's behavior; the HR employee said his supervisors should have reported Hardy's behavior to HR.

29. Mr. Meunier and the HR employee agreed that he should go on paid leave to address the trauma and emotional distress caused by Hardy's behavior and ServiceNet's response.

30. ServiceNet employed more than 1,500 employees.

31. Plaintiff has complied with all statutory requirements and conditions precedent necessary to maintain this action by filing a timely charge with the Massachusetts Commission Against Discrimination ("MCAD"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

32. Plaintiff's administrative filing with MCAD was given the case number of 25SEM02140, and the EEOC case number was 16C-2025-02218.

33. MCAD issued a dismissal and notification of rights dated January 22, 2026.

34. EEOC issued a Notice of Right to Sue on March 5, 2026.

3

35. Plaintiff has exhausted any and all administrative procedures prior to filing this Complaint.

## COUNT I
### Sexual Harassment – 42 U.S.C. 2000e-2(a)(1)
### Meunier v. ServiceNet, Inc.

36. Plaintiff restates and realleges paragraphs 1-35.

37. At all relevant times, Hardy was acting within the scope of his employment as a Nurse Educator for ServiceNet and interacted with Plaintiff in connection with workplace duties and trainings.

38. Plaintiff was subjected to unwelcome sexual touching by Hardy on dozens of occasions, including grabbing Plaintiff's chest in the area around the nipple, despite Plaintiff's objections.

39. The conduct was sexual in nature, humiliating, degrading, and violated Plaintiff's bodily autonomy.

40. Plaintiff reported the conduct to his supervisor and his supervisor and management employees were otherwise aware of Hardy's harassing conduct. Management, aware of Hardy's inappropriate workplace behavior, declined to take direct corrective action because of Hardy's perceived value to ServiceNet or for other reasons.

41. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

42. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count I, awarding damages, equitable relief, back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT II
### Hostile Work Environment – 42 U.S.C. 2000e-2(a)(1)
### Meunier v ServiceNet, Inc.

42. Plaintiff restates and realleges paragraphs 1-41.

43. Plaintiff experienced unwelcome sexual harassment before and after Management was aware of Hardy's behavior, including repeated chest grabbing and related misconduct.

4

44. The harassment was severe and pervasive, creating an intimidating, hostile, and offensive work environment for a reasonable person in Plaintiff's position.

45. ServiceNet had notice of the harassment and failed to take prompt and effective remedial action, instead proposing only that Plaintiff's supervisor act as a "buffer" and declining direct action because of Hardy's value or for other reasons.

46. The conduct unreasonably interfered with Plaintiff's work performance and/or altered the terms and conditions of the complainant's employment.

47. ServiceNet was aware of the intolerable working conditions facing Plaintiff and failed to take adequate steps to rectify the situation.

48. As a result, ServiceNet allowed, participated in, and/or condoned the workplace harassment and creation of the offensive/hostile work environment.

49. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count II, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT III
### Disparate Treatment on the Basis of Sex – 42 U.S.C. 2000e-2(a)(1)
### Meunier v. ServiceNet, Inc.

50. Plaintiff restates and realleges paragraphs 1-49.

51. Plaintiff alleges he was discriminated against based on being male and subjected to a hostile work environment in violation of Title VII.

52. ServiceNet's decision not to take direct action against Hardy after notice, while acknowledging prior inappropriate workplace behavior by Hardy, constitutes intentional discrimination and/or disparate treatment with respect to the terms and conditions of employment.

53. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count III, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT IV
### Violation of M.G.L. c. 151B § 4(16A) – Sexual Harassment
### Meunier v. ServiceNet, Inc.

54. Plaintiff restates and realleges paragraphs 1-53.

55. At all relevant times, Hardy was acting within the scope of his employment as a Nurse Educator for ServiceNet and interacted with Plaintiff in connection with workplace duties and trainings.

56. Plaintiff was subjected to unwelcome sexual touching by Hardy on dozens of occasions, including grabbing Plaintiff's chest in the area around the nipple, despite Plaintiff's objections.

57. The conduct was sexual in nature, humiliating, degrading, and violated Plaintiff's bodily autonomy.

58. Plaintiff reported the conduct to his supervisor and his supervisor and management employees were otherwise aware of Hardy's harassing conduct. Management, aware of Hardy's inappropriate workplace behavior, declined to take direct corrective action because of Hardy's perceived value to ServiceNet or for other reasons.

59. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

60. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count IV, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT V
### Hostile Work Environment – M.G.L. c. 151B
### Meunier v. ServiceNet, Inc.

61. Plaintiff restates and realleges paragraphs 1–60.

62. Plaintiff experienced unwelcome sexual harassment before and after Management was aware of Hardy's behavior, including repeated chest grabbing and related misconduct.

63. The harassment was severe and pervasive, creating an intimidating, hostile, and offensive work environment for a reasonable person in Plaintiff's position.

6

64. ServiceNet had notice of the harassment and failed to take prompt and effective remedial action, instead proposing only that Plaintiff's supervisor act as a "buffer" and declining direct action because of Hardy's value or for other reasons.

65. The conduct unreasonably interfered with Plaintiff's work performance and/or altered the terms and conditions of the complainant's employment.

66. ServiceNet was aware of the intolerable working conditions facing Plaintiff and failed to take adequate steps to rectify the situation.

67. As a result, ServiceNet allowed, participated in, and/or condoned the workplace harassment and creation of the offensive/hostile work environment.

68. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count V, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT VI
### Aiding and Abetting – M.G.L. c. 151B § 4(5)
### Meunier v. ServiceNet, Inc.

69. Plaintiff restates and realleges paragraphs 1-68.

70. ServiceNet had knowledge of the sexual harassment, and an obligation and authority to investigate and/or take remedial action.

71. ServiceNet through its agents and employees, intentionally failed to properly investigate the sexually offensive/hostile work environment, and/or take any remedial action to correct the same.

72. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against ServiceNet on Count VI, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

7

## COUNT VII
### Assault and Battery
### Meunier v. Robert Hardy

73. Plaintiff restates and realleges paragraphs 1-72.

74. Hardy intentionally and without consent grabbed Plaintiff's chest in the area around the nipple on dozens of occasions, causing harmful or offensive contact.

75. As a result of Defendant's actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against Hardy on Count VII, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT VIII
### Violation of M.G.L. c. 151B § 4(16A) -- Sexual Harassment
### Meunier v. Robert Hardy

76. Plaintiff restates and realleges paragraphs 1-75.

77. At all relevant times, Hardy was acting within the scope of his employment as a Nurse Educator for ServiceNet and interacted with Plaintiff in connection with workplace duties and trainings.

78. Plaintiff was subjected to unwelcome sexual touching by Hardy on dozens of occasions, including grabbing Plaintiff's chest in the area around the nipple, despite Plaintiff's objections.

79. The conduct was sexual in nature, humiliating, degrading, and violated Plaintiff's bodily autonomy.

80. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

81. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against Robert Hardy on Count VIII, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT IX
### Hostile Work Environment – M.G.L. c. 151B
### Meunier v. Robert Hardy

82. Plaintiff restates and realleges paragraphs 1-81.

83. Plaintiff experienced unwelcome sexual harassment before and after Management was aware of Hardy's behavior, including repeated chest grabbing and related misconduct.

84. The harassment was severe and pervasive, creating an intimidating, hostile, and offensive work environment for a reasonable person in Plaintiff's position.

85. The conduct unreasonably interfered with Plaintiff's work performance and/or altered the terms and conditions of the complainant's employment.

86. As a result of Defendants' actions, Plaintiff suffered physical and emotional injuries, incurred medical expenses and lost wages, and experienced a decline in his activities of daily living.

WHEREFORE, Plaintiff requests judgment against Robert Hardy on Count IX, awarding damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award: damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 3/24/24

Respectfully submitted,
The Plaintiff,

Laura D. Mangini, Esq. (BBO # 684620)
Alekman DiTusa, LLC
1550 Main Street, Suite 501
Springfield, MA 01103
Tel. (413) 781-0000
Fax (413) 827-0266
laura@alekmanditusa.com

Alex J. Grant, Esq. (BBO# 629754)
Alekman DiTusa, LLC
1550 Main Street, Suite 501
Springfield, MA 01103
Tel. (413) 781-0000
Fax (413) 827-0266
alex@alekmanditusa.com